**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **FIDELITY AND GUARANTY LIFE** | § | |
| **INSURANCE CO. and** | § | **PLAINTIFFS/COUNTER-DEFENDANTS** |
| **JOHN AND JANE DOE A-D** | § | |
| | § | |
| **v.** | § | **CAUSE NO. 1:06cv959 LG-RHW** |
| | § | |
| **CHRISTA WILLIAMS** | § | **DEFENDANT/COUNTER-PLAINTIFF** |

<u>**ORDER GRANTING PLAINTIFF/COUNTER-DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**</u>

THE MATTER BEFORE THE COURT is the Motion for Summary Judgment [33] filed

by the Plaintiff/Counter-Defendant, Fidelity and Guaranty Life Insurance Company.  The

Defendant/Counter-Plaintiff has filed a response.  After due consideration of the Motion and the

relevant law, it is the Court's opinion that there is no question of material fact for the jury as to

the issues presented by the movant.  The Motion will therefore be granted.

<u>DISCUSSION</u>

This case was filed as a complaint for rescission, with Fidelity seeking a declaration that a

group life insurance certificate issued to Williams's deceased husband, Delmar Williams, was

void *ab initio*.  Williams counterclaimed, making wrongful denial of life insurance benefits and

related claims.  Fidelity filed a motion for summary judgment asserting that the "Good Health"

provision of the life insurance policy unambiguously precludes payment of any benefits under the

life insurance policy.

<u>The Motion for Summary Judgment:</u>

Fidelity's motion is based on Delmar Williams's application for a group health life

insurance policy.  The application included a "Good Health" provision, which required that in

order for the certificate to take effect, it must be delivered to and accepted by the insured while

the insured's health remained as stated in the application.  In response to a medical question in

the application, Delmar denied having ever been treated for or diagnosed with cancer.  Before the

certificate was delivered to and accepted by Delmar, he was both treated for and diagnosed with

esophageal cancer.  Therefore, on the delivery date, his health was not as stated in the

application.  Thus, Fidelity argues that Williams is not entitled to benefits under the terms of the

policy and requests a declaratory judgment to that effect.  Fidelity also moves for summary

judgment on Williams's state law counterclaims related to the denial of death benefits under the

policy.

The Policy of Insurance:

>    The "Good Health" provision of the insurance policy, found in the application form,

states that:

> no insurance will take effect unless and until both of the following conditions are
> satisfied during each proposed insured's lifetime and while each proposed
> insured's health is as stated in this application: (1) this certificate/policy is
> delivered to and accepted by the Owner; and (2) the full initial premium for the
> mode of payment chosen is paid at our Home Office.

Ct. R. 33-6 p. 56.  Delmar Williams was the proposed insured and Owner of the policy.  *Id*. at 6.

The application form was signed by Christa Williams for Delmar Williams on November 19,

2003.  Ct. R. 33-2 p. 10.  Mr. Williams underwent the routine medical exam required by Fidelity

on November 22, 2003.  Ct. R. 33-6 p 67-71.  Fidelity processed the application and issued a

certificate showing $100,000 in coverage beginning December 18, 2003, and expiring December

18, 2003.  *Id.* at 18.  The insurance policy was delivered to Delmar on or about January 13, 2004.

In early December 2003, shortly after completing the application, Delmar Williams went to the doctor complaining of a sore throat. Ct. R. 33-2 p. 50, 66. By mid-December 2003, he had been diagnosed with esophageal cancer and begun treatment. *Id*. at 14. Delmar's medical records indicate that the diagnosis may have been reported to him on December 16, 2003. Ct. R. 33-10 p. 6. Williams asserts that Delmar was not given a definitive diagnosis of esophageal cancer until sometime on December 18, 2003, noting the December 18, 2003 date of Delmar's Upper Endoscopy.[1] Ct. R. 37-7. Furthermore, Delmar's treating physician placed the diagnosis date at December 18, 2003. Ct. R. 37-9. Williams argues that because the date of the insurance certificate was December 18, 2003, the policy of insurance had already become effective by the time Delmar's cancer was diagnosed.

In the case of *Fidelity and Guaranty Life Insurance Co. v. Payne*, 2003 WL 22143249 (N.D. Ill. Sept. 16, 2003) the court considered a life insurance application which contained the same medical questionnaire and "good health" provision as the application in this case.[2] *Id*. at *1. The applicants indicated that they had not been diagnosed with or treated for cancer. *Id.* Fidelity issued the certificate of insurance on September 3, 2001. *Id.* On September 10, 2001, one of the applicants was diagnosed with esophageal cancer. *Id.* The insurance policy was

---

[1] However, that record also indicates that Mr. Williams presented "with a diagnosis of malign eso stricture," indicating that the cancer had already been diagnosed before the Upper Endoscopy was performed. Ct. R. 37-7.

[2] The good health provision in *Fidelity* reads as follows:
I also agree that, except as provided in this application's Receipt, if issued, no insurance will take effect unless and until both of the following conditions are satisfied during each proposed insured's lifetime and while each proposed insured's health is as stated in this application: (1) this certificate is delivered to and accepted by the Owner; and (2) the full initial premium for the mode of payment chosen is paid at our Home Office.

delivered to the applicants on September 29, 2001. *Id.* When Fidelity refused to pay death

benefits, the court held:

> The plain language of the Policy required that, in order for the insurance to take
> effect, the Policy be delivered to Mr. Payne while his health was "as stated" in the
> Application. In the Application, Mr. Payne represented (truthfully) that he had
> not been treated for or diagnosed with cancer. After completing the Application,
> but before delivery of the Policy, he was diagnosed with cancer. Therefore, upon
> delivery, his health was not as stated in the Application, and this condition
> precedent to the insurance taking effect was not satisfied.

*Id.*

This analysis is in accord with the law in Mississippi; conditions may be imposed in an

application for life insurance, and the "conditional insuring agreement" created by the acceptance

of an application "does not operate to provide coverage *unless* and *until* [the] application

requirements are fulfilled." *Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238, 241 (5th Cir.

1990) (emphasis in original). The policy of insurance in this case required that Delmar's health

remain as stated in the application until the certificate/policy was delivered to and accepted by

him. Was Delmar's health "as stated" in the application at the time the certificate/policy was

delivered? Although Delmar may not have been aware of his condition at the time he completed

his insurance application, the evidence establishes that the onset of his esophageal cancer

predated the delivery of the insurance certificate and the insurance policy. Thus his health was

not "as stated" in the application when the certificate/policy was delivered.

Williams also argues that the provisions of Fidelity's insurance policy are ambiguous and

unclear, because the "Effective Date" of the policy of insurance, as stated on the Certificate of

Insurance, and as defined in the policy of insurance, is December 18, 2003. In Williams's view,

this conflicts with the requirement that the Certificate be delivered while the applicant's health

remains as stated in the application before the policy becomes effective.

The policy's definition of "Certificate Date" is: "[t]he date on which the initial premium is due and on which coverage starts. . . ."  The policy also provides that "[t]he effective date for Coverage provided in the original application will be the Certificate Date."

Reading these provisions together with the "Good Health" provision, in order for the insurance to take effect at all, the insured's health must be as stated in the application when the certificate/policy is delivered.  Provided this and other conditions precedent have been satisfied, coverage is effective as of the Certificate Date.  The Court finds no ambiguity created by the "Certificate Date," "Effective Date" and "Good Health" provisions of the policy.

<u>The Agent's Representations:</u>

In the alternative, Williams contends that the representations of the Fidelity insurance agent, Michael Wargo, bound Fidelity to coverage under the policy of insurance, because Wargo told Williams that the policy was effective when the application was completed and the first premium tendered.  Williams testified:

Q.   Okay. Were there any questions on this occasion when the application was being completed?
A.   When it was completed? Yes. I asked him when do the policy be effective.
Q.   And what did he say?
A.   He say when I hand him the check, it would be immediately effective.

Ct. R. 37-2 p. 2-3.

Williams argues that in the case of *United American Insurance Co. v. Merrill*, ___ So. 2d ___, 2007 WL 2493905 (Miss. Sep. 6, 2007), the Mississippi Supreme Court affirmed that the actions of the agent can bind the insurance company regardless of the language in the policy.  Thus, Williams concludes that the policy became effective on the day the application and

premium payment were tendered to Wargo - November 19, 2003.  In the *Merrill* case, the court stated that "as an agent for [the insurance company], [the insurance company] is bound by the information [the agent] gave regarding the policy."  *Id*. at \*18.  The court cited *American Income Life Insurance Co. v. Hollins*, 830 So. 2d 1230 (Miss. 2002) in support of this statement.

Both *Hollins* and *Merrill* involve agent representations in distinguishable circumstances, limiting their usefulness in this case.  In *Merrill*, the insurance agent made a statement during the application process that the policy benefit would be paid within 30 days of receipt of a death certificate.  *Merrill*, ___ So. 2d ___, 2007 WL 2493905 \* 7.  The court held, without further discussion, that introduction of this statement into evidence at trial was not an abuse of discretion because, as a matter of Mississippi law, the agent had bound the insurance company to the information she gave regarding the policy.  *Id.* at \*18 (citing *Hollins*, 830 So. 2d at 1237).  The larger issue was whether death benefits could be denied based on the insurance company's unilateral decision that the applicant was being treated for congestive heart failure when his physicians said he was not.

In *Hollins*, the applicant told the agent about her specific health problems while the agent was soliciting her responses to the medical questionnaire.  The agent did not make any notation of her preexisting medical problems on the application form, but advised her that her problems would be covered by the policy.  *Hollins*, 830 S. 2d at 1235-36.  The Court found that the insurance company could not rescind the policy when the applicant's health problems required surgery one year later.  The insurance company was aware of her preexisting condition through the agent, and the agent's failure to note it on the application was not the equivalent of a material misrepresentation by the applicant which would justify recission.  *Id.* at 1236.

This Court finds guidance in the Fifth Circuit's examination of Mississippi law regarding agent representations in *Leonard v. Nationwide*, 499 F.3d 419 (5th Cir. 2007).  "[A]n agent's representations that purport to modify the insurance contract can bind an insurer only if the statements were made pursuant to actual or apparent authority."  *Id*. at 439.  As in *Leonard*, the application form in this case notified Williams that the agent was not authorized to modify contracts,[3] and therefore only apparent authority is pertinent.  The court went on to say:

> Somewhat tautologically, the Mississippi Supreme Court has explained that "[a]pparent authority exists when a reasonably prudent person, having knowledge of the nature and usages of the business involved, would be justified in supposing, based on the character of the duties entrusted to the agent, that the agent has the power he is assumed to have." A policyholder seeking to recover based on an agent's apparent authority must show three things: (1) acts or conduct on the part of the principal indicating the agent's authority; (2) reasonable reliance on those acts; and (3) a detrimental change in position as a result of such reliance. The insured is bound by policy language that would put a reasonable person on notice of limitations to the agent's authority.

*Leonard*, 499 F.3d at 439 (citations omitted).

Williams's claims fail on the first two elements of apparent authority.  There have been no actions or conduct on the part of Fidelity alleged that would indicate Wargo had authority to modify the insurance policy to provide for coverage beginning on the date the application was completed and a premium tendered.  In addition to the printed portions of the application form discussed above advising Delmar of the conditions under which coverage would become effective, Delmar apparently understood that a physical examination was also necessary for the policy to go into effect, as he obtained one within days of completing the application.  Ct. R. 33-6

---

[3]  The printed form above Delmar's signature states in bold lettering: **I agree that: a copy of this application will form a part of any certificate/policy issued; and that no agent can pass on insurability or modify any certificate issued by the Insurer**.  Ct. R. 33-6 p. 56.

p. 67-71.  Any reliance on Wargo's statement was objectively unreasonable in light of the provisions to the contrary included in the application form signed by Delmar.  *Leonard*, 499 F.3d at 440.  The Court therefore concludes that Wargo's representation that coverage would begin immediately did not bind Fidelity to coverage under any conditions other than those stated in the policy of insurance.

<u>Remaining State Law Claims:</u>

Williams alleged state law counterclaims of breach of contract, bad faith breach of contract, malpractice, negligent misrepresentation, fraud, fraudulent misrepresentation, fraudulent inducement, unjust enrichment, negligence and/or gross negligence, fraudulent concealment, conversion, and "the Tort of Outrage" against Fidelity and Michael Wargo.[4] Fidelity contends that any claim against it in the nature of emotional distress is moot,[5] because the insurance policy never took effect.  Fidelity did not have an obligation to pay death benefits to Williams.  Rather, it was justified in its refusal to pay benefits.  The Court agrees that these claims (and others) are mooted by its determination that the Williams's inability to satisfy conditions precedent resulted in the insurance policy never becoming effective.  Thus, Williams's claims of breach of contract, bad faith breach of contract and outrage, to the extent they are alleged against Fidelity, should be dismissed.

A claim of unjust enrichment requires Williams to show "'there is no legal contract but . .

---

[4]  The record does not show that Michael Wargo has been served with process or filed an answer to the counterclaims.

[5]  Neither party briefed or argued either the applicability or viability of Williams's negligent misrepresentation, fraud, fraudulent misrepresentation, fraudulent inducement, negligence and/or gross negligence, or fraudulent concealment claims against Fidelity.  As a result, those claims remain pending.

. the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another.'" *Ellis v. Anderson Tully Co.*, 727 So.2d 716, 719 (Miss. 1998).  The parties do not dispute that all premiums paid by the Williams's have been returned.  Fidelity has retained no funds which in good conscience belong to Williams.  Fidelity is entitled to judgment on this claim.

Normally, a claim of conversion cannot be brought to recover money.  A cause of action exists for conversion of money only when money is earmarked or otherwise identifiable, such as enclosed in a container like a bag or chest.  *Hensley v. Poole*, 910 So. 2d 96, 101 (Ala. 2005); *Blades v. Countrywide Home Loans, Inc.*, 2007 WL 2746678 (S.D. Miss. Sep. 18, 2007).  Fidelity argues that "the only conceivable money to which Defendant possesses a right of ownership, are the insurance premiums."  Ct. R. 34 p. 21.  As noted above, the parties agree that the premium payments have been refunded to Williams, and Williams does not argue that Fidelity has possession of other, earmarked funds in which she has a right of ownership.  Thus, Fidelity is entitled to judgment as a matter of law on this claim.

Finally, Fidelity requests judgment as a matter of law as to Williams's claim for punitive damages.  In order to recover punitive damages from Fidelity, Mississippi law requires Williams to prove by a preponderance of the evidence that Fidelity acted with (1) malice or (2) gross negligence or reckless disregard for the rights of others.  *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290, 293 (Miss. 1992).  "If the insurer had a legitimate or arguable reason to deny payment of [a] claim, then the trial judge should refuse to grant a punitive damage instruction."  *Id.* Williams bears the burden of demonstrating that Fidelity had no arguable reason for denying her claim.  *Caldwell v. Alfa Ins. Co.*, 686 So.2d 1092, 1097 (Miss. 1996).  This burden "likewise

exists at the summary judgment stage where the insurance company presents an adequate prima

facie showing of a reasonably arguable basis for denial so as to preclude punitive damages."

*Caldwell*, 686 So.2d at 1097 (quoting *Polk v. Dixie Ins. Co.*, 897 F.2d 1346, 1350 (5th Cir.

1990).  Because the Court has found that Fidelity did have a arguable reason for denying

Williams's claim, Fidelity is entitled to judgment as a matter of law as to Williams' claim for

punitive damages.

      **IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary

Judgment [33] filed by the Plaintiff/Counter-Defendant, Fidelity and Guaranty Life Insurance

Company is **GRANTED**.  The term life insurance certificate no. L0043354 issued to

Defendant's husband, Delmar D. Williams, is rescinded and declared null and void.

Defendant/Counter-Plaintiff's counterclaims of breach of contract, bad faith breach of contract,

unjust enrichment, conversion, outrage and punitive damages against Plaintiff/Counter-

Defendant, Fidelity and Guaranty Life Insurance Company, are **DISMISSED**.

      **SO ORDERED AND ADJUDGED** this the 1st day of February, 2008.


s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE